UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDUL A. JALUDI, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-cv-02076 |
| v. | (MANNION, J.)<br>(SAPORITO, M.J.) |
| CITIGROUP, | |
| Defendant. | |

# REPORT AND RECOMMENDATION

This federal civil action commenced on October 27, 2015, when the plaintiff, Abdul A. Jaludi, lodged a *pro se* complaint, together with a motion for leave to proceed *in forma pauperis*, which we granted on October 30, 2015. (Doc. 1; Doc. 2; Doc. 4.) In his complaint, Jaludi claimed that his former employer, Citigroup, retaliated against him for reporting various ethical violations internally. The complaint sought relief under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A, and the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*[1]

---

[1] We note that the *pro se* complaint also contains passing references to a criminal statute, 18 U.S.C. § 1513(e). (*See* Doc. 1, at 1, 3.) We decline to construe these references as a claim for relief under § 1513 because
*(continued on next page)*

Citigroup moved to dismiss and compel arbitration on both sets of claims. Ultimately, the motion was denied with respect to the SOX claims and granted with respect to the RICO claims. *See generally Jaludi v. Citigroup*, Civil Action No. 3:15-cv-02076, 2016 WL 8290798 (M.D. Pa. June 21, 2016) (report and recommendation) (Doc. 33), *adopted in part and rejected in part*, 2016 WL 4528352 (M.D. Pa. Aug. 30, 2016) (Doc. 40), *aff'd in part and rev'd in part*, 933 F.3d 246 (3d Cir. 2019) (Doc. 46).

Now before the Court is Citigroup's Rule 12(b)(6) motion to dismiss the remaining SOX claims for failure to state a claim upon which relief can be granted. (Doc. 55.) The motion has been fully briefed by the

---

there simply is no private cause of action under this criminal statute. *See* 18 U.S.C. § 1513; *Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009). *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a federal court's obligation to liberally construe the filings of *pro se* litigants).

We further note that the *pro se* complaint includes a request for "a whistleblower's share" of any monetary sanctions collected in government enforcement actions against Citigroup, pursuant to an anti-retaliation provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6. (Doc. 1 ¶ 66.) We decline to construe this cursory reference to that statutory provision as a Dodd-Frank retaliation claim because the complaint does not allege that Jaludi provided information to the U.S. Securities and Exchange Commission, and thus he does not meet the definition of a "whistleblower" covered by that act. *See* 15 U.S.C. § 78u-6; *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777–82 (2018). *See generally Mala*, 704 F.3d at 244–46.

parties, and it is ripe for disposition. (*See* Doc. 56; Doc. 63; Doc. 66.)

## I. BACKGROUND

Jaludi began working for a Citigroup subsidiary in 1985. After more than two decades working at Citigroup, Jaludi had been elevated to a position as a senior vice president managing a global team. His responsibilities included troubleshooting complaint monitoring systems, merging command centers, and streamlining an application for customer statements. Among these duties, he was responsible for ensuring that problem tickets were created for system- and application-related problems that could affect customers.

Citigroup was obligated to report severity level one problem tickets to the Office of the Comptroller for the Currency, an independent bureau within the United States Department of the Treasury. In early 2010, Jaludi discovered that problem tickets were being mishandled. Jaludi alleges that, instead of reporting them, Citigroup had deleted hundreds of severity level one problem tickets or reclassified them to a lower level to avoid reporting obligations. To compound this, Jaludi alleges that the company's help desks refused to even open a severity level one problem ticket "unless they absolutely had to." (Doc. 1 ¶ 12.)

Jaludi reported these issues to management, escalating his complaints up the chain of command. Jaludi alleges that he was admonished by his superiors to "keep his mouth shut." (*Id.* ¶ 17.) Jaludi was subsequently demoted, his teams were taken away from him, and he was transferred to another division, where he encountered further difficulties with management.

In February 2013, Jaludi was told that he was being laid off "due to deteriorating business conditions and budget constraints." (*Id.* ¶ 39.) On April 21, 2013, he was terminated. Jaludi alleges that his termination was in retaliation for his internal whistleblowing conduct.

Jaludi further alleges that this retaliatory conduct persisted after his termination. He claims that Citigroup and its employees were responsible for his unsuccessful job application efforts over the next few years, both with other units within Citigroup and with non-Citigroup employers within the same industry. In May 2014, Jaludi alleges that a former coworker at Citigroup told him that his firm had several openings, but despite Jaludi's attempts to email and call him, Jaludi never heard from that coworker again. In September 2014, Jaludi interviewed for a position at MetLife, but despite Jaludi's attempts to email and call the

hiring manager, he never heard back from MetLife. In November 2014, a retired coworker referred Jaludi for a consultant position, but later informed him that the hiring manager was not allowed to consider Jaludi. Before filing his civil complaint in October 2015, Jaludi allegedly applied for more than a dozen positions with Citigroup for which he was qualified, some of which resulted in interviews, but he was not hired.

On October 27, 2015, Jaludi filed this *pro se* civil action. Before filing suit, he did not submit a whistleblower complaint to the Occupational Safety and Health Administration ("OSHA"), an agency of the United States Department of Labor. Ultimately, however, he did file a whistleblower complaint with OSHA on or about February 23, 2018. (Doc. 56-1.) That administrative complaint covered the same facts alleged in his *pro se* complaint, as well as some additional alleged interference with his employment prospects by Citigroup and its employees in the years that followed. Jaludi's administrative complaint appears to remain pending before OSHA.[2]

---

[2] Although the complaint does not reference the plaintiff's OSHA administrative complaint—it had not yet been filed with the agency at the time this lawsuit commenced—we may properly take judicial notice of "records and reports of administrative bodies" such as OSHA. *Sturgeon*
*(continued on next page)*

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure[3] authorizes a

---

*v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 258 (E.D. Pa. 2020); *Fadaie v. Alaska Airlines, Inc.*, 293 F. Supp. 2d 1210, 1214 (W.D. Wash. 2003) (taking judicial notice of administrative complaint filed with OSHA). "Administrative complaints and agency decisions are the type of public records that are properly the subject of judicial notice." *Fadaie*, 293 F. Supp. 2d at 1215. *See generally* Fed. R. Evid. 201.

[3] As the defendant has noted in its brief in support (Doc. 56, at 7 n.5), some federal courts have held that a plaintiff's failure to file a timely OSHA administrative claim is a jurisdictional defect. *See, e.g.*, *Daly v. Citigroup Inc.*, 939 F.3d 415, 426–28 (2d Cir. 2019); *Verble v. Morgan Stanley Smith Barney, LLC*, 148 F. Supp. 3d 644, 649–50 (E.D. Tenn. 2015); *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010). *But see Willis v. Vie Fin. Grp., Inc.*, No. Civ.A. 0-435, 2004 WL 1774575, at *2 n.3 (E.D. Pa. Aug. 6, 2004) (rejecting jurisdictional argument and considering motion to dismiss SOX claims for failure to exhaust administrative remedies under Rule 12(b)(6)). Although the Third Circuit has not directly ruled on this issue with respect to SOX, it recently analyzed a similar statutory provision in the Federal Railroad Safety Act, 49 U.S.C. § 20109(d), and held that a plaintiff's failure to file a timely OSHA administrative claim under that statute was *not* a jurisdictional defect. *See Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 131–35 (3d Cir. 2019). In doing so, we note that the Third Circuit expressly considered the aforementioned line of authority treating administrative exhaustion of SOX claims as a jurisdictional issue and rejected it, characterizing those decisions as "drive-by jurisdictional rulings." *Id.* at 135 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010)). We also find the *Guerra* court's analysis of the provision's mandatory language ("[a]n action . . . *shall be* commenced not later than 180 days") and its context (within a subsection "titled simply 'Procedure'") particularly compelling in our evaluation of the appropriate legal standard here, where the language of § 1514A is virtually identical to that considered in *Guerra*, *compare* 18 U.S.C. § 1514A(b)(2) ("An

*(continued on next page)*

defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions

---

action . . . shall be commenced [by filing a complaint with the Secretary of Labor] not later than 180 days after the date on which the violation occurs . . . ."), *with* 49 U.S.C. § 20109(d)(2) ("An action . . . shall be commenced [by filing a complaint with the Secretary of Labor] not later than 180 days after the date on which the alleged violation . . . occurs."), as is the statutory context, *compare* 18 U.S.C. § 1514A(b)(2) (subsection titled "Procedure"), *with* 49 U.S.C. § 20109(d)(2) (subsection titled "Procedure"). *See Guerra*, 936 F.3d at 133–34. Thus, finding the administrative exhaustion issue to be non-jurisdictional, we apply the legal standard of Rule 12(b)(6) to this motion.

and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

"SOX grants 'whistleblower' protection to employees of publicly traded companies by prohibiting employers from retaliating against employees for reporting certain potentially unlawful conduct." *Coppinger-Martin v. Solis*, 627 F.3d 745, 748–49 (9th Cir. 2010) (citing 18 U.S.C. § 1514A). But a plaintiff seeking whistleblower protection under SOX must first file an administrative complaint with OSHA, *see* 29 C.F.R. § 1980.103(c), "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." 18 U.S.C. § 1514A(b)(2)(D); *see also* 29 C.F.R.

§ 1980.103(d); *Coppinger-Martin*, 627 F.3d at 749.[4]

None of the retaliatory conduct alleged in the instant civil complaint occurred within the 180 days preceding the filing of Jaludi's administrative complaint with OSHA on or about February 23, 2018. Jaludi was terminated nearly five years earlier on April 21, 2013. The most recent post-employment retaliatory conduct alleged with a specified timeframe was in connection with a potential consulting position with Citigroup that Jaludi sought in November 2014. The complaint alleges interference with other job applications, without providing even approximate dates, but all of those occurred before Jaludi filed the instant civil complaint on October 27, 2015, more than two years prior to filing his OSHA administrative complaint. Because Jaludi did not timely exhaust his administrative remedies with respect to the SOX retaliation claims asserted in his federal civil complaint, he is precluded from any recovery on those claims in this action. *See Willis v. Vie Fin. Grp., Inc.*, No. Civ.A. 0-435, 2004 WL 1774575, at *4–*6 (E.D. Pa. Aug. 6, 2004) (holding that the SOX exhaustion requirement precluded recovery for

---

[4] At the time of the events giving rise to the *Coppinger-Martin* decision, the applicable time period under the statute was 90 days. The statute was amended in July 2010 to extend that period to 180 days.

acts of retaliation that occurred outside the 180-day statutory time period) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 109, 113 (2002)); *see also Daly v. Citigroup Inc.*, 939 F.3d 415, 428 (2d Cir. 2019) (affirming dismissal of SOX claims where plaintiff filed her OSHA administrative complaint two years after her allegedly retaliatory termination); *Miller v. Stifel, Nicolaus & Co.*, 812 F. Supp. 2d 975, 983 (D. Minn. 2011) (holding that plaintiff could not recover for SOX whistleblower claims that occurred outside the applicable statutory time period); *cf. Morgan*, 536 U.S. at 105 (holding that similarly worded Title VII exhaustion requirement "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period" even when the acts "are related to acts alleged in timely filed charges").

In his opposition brief, Jaludi contends that Citigroup has conceded the timeliness of his claims in the administrative proceedings before OSHA. In addition to the events alleged in his federal civil complaint, Jaludi's February 2018 administrative complaint alleges that he spoke with a headhunter on December 20, 2017, and submitted his resume, but the headhunter stopped responding to Jaludi's inquiries after advising

him that there was "no update" on January 30, 2018.[5] (Doc. 56-1, at 11.) In its response to the administrative complaint, Citigroup conceded that this most recent incident alleged in the administrative complaint was not time-barred. (Doc. 64-2, at 3.) But, contrary to Jaludi's characterization of the administrative proceedings, Citigroup expressly argued that "all of his allegations prior to September 29, 2017[,] [we]re untimely." (Doc. 64-2, at 3.) Moreover, the timeliness of Jaludi's administrative complaint with respect to this single, most recent incident of alleged retaliation does not rescue his claims concerning earlier events from untimeliness. "Under SOX, each retaliatory adverse employment decision constitutes a separate act, and an employee may complain only of discrete acts that occurred within the applicable time period." *Miller*, 812 F. Supp. 2d at 983; *see also Daly*, 939 F.3d at 428–29 (rejecting the "continuing violation" doctrine in the SOX retaliation context when the alleged violation involves discrete acts rather than an overarching policy); *Willis*, 2004 WL 1774575, at *4; *cf. Morgan*, 536 U.S. at 113.

---

[5] The administrative complaint also provided specific dates for some of the job interviews alleged in Jaludi's civil complaint, the latest of which occurred in October 2015. Other than his interaction with a headhunter in December 2017 and January 2018, the administrative complaint does not include any other alleged acts of retaliation.

Jaludi also argues that Citigroup waived any timeliness or exhaustion defense because it did not raise the defense in its earlier motion to dismiss and compel for arbitration. But "[a] party waives a defense only if it fails to raise it by motion *and* does not include it in a responsive pleading." *Barzanty v. Verizon PA, Inc.*, 361 Fed. App'x 411, 415 (3d Cir. 2010) (emphasis in original) (citing Fed. R. Civ. P. 12(h)). Citigroup has not yet filed a responsive pleading, having instead interposed first a motion to compel arbitration and now a motion to dismiss for failure to state a claim. Moreover, exhaustion and timeliness defenses are not among the several enumerated defenses that are waived by omitting them from an initial motion to dismiss. *See* Fed. R. Civ. P. 12(h)(1); *see also* Fed. R. Civ. P. 12(b)(2)–(5).[6]

Jaludi also references the doctrine of equitable tolling in passing. (*See* Doc. 63, at 12.) But he has failed to articulate any basis for equitable

---

[6] By the terms of this rule, the only defenses that are waived by mere omission from an initial motion to dismiss are lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process. *See* Fed. R. Civ. P. 12(b)(2)–(5). Exhaustion and timeliness defenses, on the other hand, are generally considered under Rule 12(b)(6), which permits dismissal for failure to state a claim upon which relief can be granted, or under Rule 12(c) or Rule 56. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 87–88 (3d Cir. 1999); *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 558 n.7 (E.D. Pa. 2016).

tolling, and we find none in the record before us. *See generally Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000) ("Equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.").

Finally, in his brief in opposition, Jaludi requests that this case be stayed pending a decision by OSHA on his February 2018 administrative complaint. (Doc. 63, at 16–17.) "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "A stay is an extraordinary measure, and the decision to impose a stay rests within the sound discretion of the district court." *Barker v. Kane*, 149 F. Supp. 3d 521, 525 (M.D. Pa. 2016) (footnote omitted). "To exercise that discretion within the bounds of the law, a district court must 'weigh competing interests and maintain an even balance.'" *Rajput v. Synchrony Bank*, 221 F. Supp. 3d 607, 609 (M.D. Pa. 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). In determining whether to grant a stay, we consider "(1) the

length of the requested stay; (2) the hardship or inequity that the movant would face going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay will simplify issues and promote judicial economy." *Id.* at 610. "Judicial efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004).

In light of the facts of this case, we find a stay to be inappropriate. The length of the requested stay is indefinite, and we note that the OSHA proceedings at this point have been pending for more than two years. Although granting a stay would inflict no substantial injury upon the non-movant, Citigroup, in light of the comprehensive and dispositive nature of the timeliness or exhaustion defense raised by the defendant, we find no hardship or inequity to the plaintiff in deciding the issue now, rather than later, nor would a stay simplify issues or promote judicial economy.

Accordingly, we recommend that the defendant's motion to dismiss be granted and the plaintiff's surviving SOX claims be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. We further recommend that these claims be dismissed *without* leave to amend because, based on the facts alleged in both the plaintiff's original civil complaint and his subsequently filed administrative complaint, it is clear that any amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that:

1. The defendant's motion to dismiss (Doc. 55) be **GRANTED**;

2. The plaintiff's whistleblower retaliation claims brought under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, be **DISMISSED** for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

3. The Clerk be directed to mark this case as **CLOSED**.

Dated: August 12, 2020    *s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDUL A. JALUDI, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-cv-02076 |
| v. | (MANNION, J.) <br> (SAPORITO, M.J.) |
| CITIGROUP, | |
| Defendant. | |

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated August 12, 2020. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: August 12, 2020         ***s/Joseph F. Saporito, Jr.***
                               JOSEPH F. SAPORITO, JR.
                               United States Magistrate Judge