UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDUL A. JALUDI, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:15-2076 |
| v. | : | (JUDGE MANNION) |
| CITIGROUP, | : | |
| Defendants | : | |

## MEMORANDUM

Pending before the court is the report of Magistrate Judge Joseph F. Saporito, Jr., which recommends that the defendant's motion to dismiss be granted and the plaintiff's complaint be dismissed without leave to amend. (Doc. 67). The plaintiff has filed objections to the report. (Doc. 68). Based upon the court's review of the record, Judge Saporito's report will be **ADOPTED IN ITS ENTIRETY**.

The plaintiff has not objected to the following background set forth in Judge Saporito's report:

> Jaludi began working for a Citigroup subsidiary in 1985. After more than two decades working at Citigroup, Jaludi had been elevated to a position as a senior vice president managing a global team. His responsibilities included troubleshooting complaint monitoring systems, merging command centers, and streamlining an application for customer statements. Among these duties, he was responsible for ensuring that problem

tickets were created for system- and application-related problems that could affect customers.

Citigroup was obligated to report severity level one problem tickets to the Office of the Comptroller for the Currency, an independent bureau within the United States Department of the Treasury. In early 2010, Jaludi discovered that problem tickets were being mishandled. Jaludi alleges that, instead of reporting them, Citigroup had deleted hundreds of severity level one problem tickets or reclassified them to a lower level to avoid reporting obligations. To compound this, Jaludi alleges that the company's help desks refused to even open a severity level one problem ticket "unless they absolutely had to." (Doc. 1 ¶ 12.)

Jaludi reported these issues to management, escalating his complaints up the chain of command. Jaludi alleges that he was admonished by his superiors to "keep his mouth shut." (*Id.* ¶ 17.) Jaludi was subsequently demoted, his teams were taken away from him, and he was transferred to another division, where he encountered further difficulties with management.

In February 2013, Jaludi was told that he was being laid off "due to deteriorating business conditions and budget constraints." (*Id.* ¶ 39.) On April 21, 2013, he was terminated. Jaludi alleges his termination was in retaliation for his internal whistleblowing conduct.

Jaludi further alleges that this retaliatory conduct persisted after his termination. He claims that Citigroup and its employees were responsible for his unsuccessful job application efforts over the next few years, both with other units within Citigroup and with non-Citigroup employers within the same industry. In May 2014, Jaludi alleges that a former coworker at Citigroup told him that his firm had several openings, but despite Jaludi's attempts to email and call him, Jaludi never heard from that coworker again. In September 2014, Jaludi interviewed for a position at MetLife, but despite Jaludi's attempts to email and call the hiring manager, he never heard back from MetLife. In November 2014, a retired coworker referred Jaludi for a consultant position, but later informed him that the hiring manager was not allowed to consider Jaludi. Before filing his civil complaint in October 2015, Jaludi allegedly applied for more than a dozen positions with Citigroup for which he was qualified, some of which resulted in interviews, but he was not hired.

> On October 27, 2015, Jaludi filed this *pro se* civil action. Before filing suit, he did not submit a whistleblower complaint to the Occupational Safety and Health Administration ("OSHA"), an agency of the United States Department of Labor. Ultimately, however, he did file a whistleblower complaint with OSHA on or about February 23, 2018. (Doc. 56-1.) That administrative complaint covered the same facts alleged in his *pro se* complaint, as well as some additional alleged interference with his employment prospects by Citigroup and its employees in the years that followed. Jaludi's administrative complaint appears to remain pending before OSHA.

(Doc. 67, pp. 3-5).

The defendant has moved to dismiss the plaintiff's only remaining claim in this action seeking relief under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. §1514A. In considering the defendant's motion, Judge Saporito correctly provided that a plaintiff seeking whistleblower protection under SOX must first file an administrative complaint with OSHA "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." 18 U.S.C. §1514A(b)(2)(D); 29 C.F.R. §§ 1980.103(c), (d). As discussed by Judge Saporito, "[u]nder SOX, each retaliatory adverse employment decision constitutes a separate act, and an employee may complain only of discrete acts that occurred within the applicable time period." (Doc. 67, p. 11) (citations omitted). Since none of the retaliatory conduct alleged in the plaintiff's complaint occurred within the 180 days preceding the filing of his

administrative complaint with OSHA on or about February 23, 2018, Judge Saporito concluded that the plaintiff did not timely exhaust his administrative remedies with respect to his SOX retaliation claim, and he is now precluded from any recovery on that claim in this action. Judge Saporito further concluded that, based on the facts alleged in the instant action and in his administrative complaint, any attempt by the plaintiff to amend his complaint would be futile.

The plaintiff has filed objections to Judge Saporito's report. When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see

also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

In his objections, the plaintiff argues that each alleged act of retaliation should not be considered as a discrete act as found by Judge Saporito, but that the acts should be considered together as one ongoing and continuous act. The plaintiff further argues that Judge Saporito erred in finding that leave to amend would be futile.[1]

To the extent that the plaintiff argues that Judge Saporito should have considered the various alleged acts of retaliation as one ongoing act and not found each a discrete act, nothing in the plaintiff's objections supports this. The only authority cited by the plaintiff for his argument relates to RICO

---

[1] The plaintiff does not dispute that the applicable statute of limitations should be calculated based on the filing of his administrative complaint with OSHA on February 23, 2018. Nor does he dispute Judge Saporito's finding that none of the retaliatory conduct alleged in his complaint pending before this court occurred within the 180 days preceding the filing of his administrative complaint.

claims which are not currently in play in this action, not to SOX retaliation claims. In fact, the authority relied upon by both Judge Saporito and the defendant in response to the plaintiff's objections provides that acts, such as those alleged by the plaintiff, are to be considered separate and discrete. (Doc. 67, pp. 11; Doc. 69, pp. 8-10). As such, the plaintiff's objections will be overruled on this basis.

To the extent that the plaintiff argues that Judge Saporito erred in finding that leave to amend his complaint would be futile, by way of his brief in opposition to the defendant's motion to dismiss, the plaintiff sought leave to amend his complaint to include allegations from his administrative filing.[2] The plaintiff's administrative complaint alleges that a headhunter contacted him on December 20, 2017, regarding a position in New York. The plaintiff alleges that he gave the headhunter his resume, but heard nothing. On January 30, 2018, the plaintiff contacted the headhunter, who advised him that there was "no update" on his application.[3] Other than his interaction with

---

[2] In his objections, the plaintiff seeks to add yet more allegations which were not raised in his request to amend before Judge Saporito, nor were they included in his administrative filing. These allegations will, therefore, not be considered herein.

[3] Defendant conceded the timeliness of this allegation. However, Judge Saporito found that the timeliness of this single act did not save the plaintiff's other claims which, as discrete acts, were still untimely.

- 6 -

the headhunter in December 2017 and January 2018, the administrative complaint does not contain any other alleged acts of retaliation. There is simply nothing in the plaintiff's allegations that would indicate that the defendant was at all connected to the headhunter or that the defendant had anything to do with the headhunter's failure to respond to the plaintiff's inquiries regarding his application, such that the plaintiff could state a SOX retaliation claim against the defendant. Conclusory allegations that the defendant conspired with the headhunter to interfere with the plaintiff's employment prospects are simply insufficient. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). As such, the court finds no error with Judge Saporito's determination that leave to amend the plaintiff's complaint to add these allegations would be futile, and the plaintiff's objections will be overruled on this basis as well.

      Based upon the foregoing, an appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 3, 2020**
15-2076-02